AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Red Apple iPhone, with a cracked screen protector,<br>currently located at 443 Rifle Range Street, Roseburg,<br>Oregon, as described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:24-mc- 345 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Red Apple iPhone, with a cracked screen protector, currently located at 443 Rifle Range Street, Roseburg, Oregon, as described in Attachment A, which is attached hereto and incorporated by reference,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Property |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Sean McCaffrey, Special Agent, NPS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ Telephone at 8:15 a.m./p.m. _____ *(specify reliable electronic means).*

Date: 4/1/24 _____

_____
*Judge's signature*

City and state: Medford, Oregon _____

Mark D. Clarke, United States Magistrate Judge
*Printed name and title*

STATE OF OREGON, ss:                AFFIDAVIT OF SEAN McCAFFREY

**Affidavit in Support of an Application Under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, Sean McCaffrey, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I have been a U.S. Park Ranger (USPR) with the National Park Service since

December of 2019, with additional seasonal and part-time service from 2015 to 2019, exercising

designated law enforcement authority under 54 U.S.C. § 102701.  My current assignment is a

lead field investigator supporting Oregon Caves National Monument and Preserve from

Redwood National and State Parks, in Crescent City, California.  My training and experience

includes completing the Land Management Police Training (LMPT) basic law enforcement

certification curriculum at the Federal Law Enforcement Training Center in Glynco, Georgia, as

well as advanced investigative experience working closely with special agents of the Federal

Bureau of Investigations, National Park Service, U.S. Forest Service, Department of Homeland

Security Homeland Security Investigations, and Customs and Border Patrol agents in multiple

felony cases, including significant thefts of government property.  I have been the lead field

investigator on numerous felony investigations, including assaults, human smuggling and

immigration violations, and child endangerment incidents.  During my training and

investigations, I have become familiar with the territorial boundaries and jurisdictional status of

many National Parks, including Special Maritime and Territorial Jurisdiction, as defined in 18

U.S.C. § 7(3).  I have used information from computers, cell phones, and other electronic devices

to gain information relating to criminal investigations.

2.      I make this affidavit in support of an application under Rule 41 of the Federal

**Affidavit of Sean McCaffrey**                                                      **Page 1**

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

3.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.    Title 18 United States Code, Section 641 (Theft of Government Property), provides that the stealing or conversion of government property to personal use or use for financial gain or the receiving, concealing, or retaining of government property without authority and the intent to convert to personal use or for financial gain is subject to fines and imprisonment for not more than ten years, or both.

## Statement of Probable Cause

5.    **Theft Discovery** - On the morning of November 28, 2023, National Park Service (NPS) employee Jason Walz at Oregon Caves National Monument (ORCA) discovered that two large trees had been cut and felled across the Oregon Caves Highway, leading into the main visitor and administration area of the Oregon Caves National Monument.  Jason Walz notified NPS U.S. Park Ranger (USPR) Chief Stephen Troy and stated to USPR Chief Troy that the

**Affidavit of Sean McCaffrey**                                             **Page 2**

felled trees that were blocking Oregon Caves Highway appeared to have been cut on purpose.

Photographs taken later by ORCA NPS employee Joshua Haggett showed the trees were felled

with what appeared to be a chainsaw, and the cut pattern shows they were intended to fall across

the Oregon Caves Highway.  The following pictures were taken after the roadway was cleared,

but show the trees were felled towards the roadway (left picture) and in close proximity of the

roadway (right picture).

 

6.     Later that morning, ORCA Superintendent Jeremy Curtis informed USPR Chief

Troy that they discovered a significant burglary had apparently occurred from the ORCA

maintenance shop.  Government property stolen included a CanAm Defender Max Lone Star

UTV (manufacturer stock photograph shown below);

/ / /

/ / /

/ / /

/ / /

**Affidavit of Sean McCaffrey**                                                                                  **Page 3**



A BobCat ToolCat (manufacturer stock photograph shown below);



Tool items, including chainsaws, cordless drills, impact hammers, generators, trimmers, blowers, trimmers, and saws shown in the table below; and,

| Asset | Manufacturer Name | Model | Serial number | Inventory Date |
|---|---|---|---|---|
| Chainsaw | Husqvarna | 562XP | 5876447-05 | 07/15/20 |
| Chainsaw | Stihl | 084AV | 1124\05 | 07/15/20 |
| Chainsaw | Stihl | 026 | B175.1-1991 | 07/15/20 |
| Chainsaw | Stihl | MS211 | 280253448 | 07/15/20 |
| Chainsaw | Stihl | 021 | 238938719 | 07/15/20 |
| Chainsaw | Husqvarna | FHVXS | 0605AB | 8/11/2023 |
| Chainsaw | Stihl | 026 PRO | 11219673417A | 8/11/2023 |
| Chainsaw | Stihl | MS660 | 11229673417A | 8/11/2023 |
| Chainsaw | Stihl | MS261 |  | 8/11/2023 |
| Chainsaw | Stihl | MS661 | 11419673506C | 8/11/2023 |

**Affidavit of Sean McCaffrey**                                                                **Page 4**

| Chainsaw | Stihl | MS24 | 11393400AS | 8/11/2023 |
|---|---|---|---|---|
| Chainsaw | Stihl | 084AV | | 8/11/2023 |
| Corded Drill | Dewalt | DW2356 | 413614 | 07/15/20 |
| Cordless Drill | Dewalt | DCD940 | 762521 | 07/15/20 |
| Cordless Drill | Dewalt | DCD950 | 631871 | 07/15/20 |
| Cordless Drill | Dewalt | DCD950 | 508248 | 07/15/20 |
| Cordless Drill | Dewalt | DC285 | 385314 | 07/15/20 |
| Cordless Drill | Dewalt | DC825 | 291784 | 07/15/20 |
| Cordless Drill | Dewalt | | 490007 | 07/15/20 |
| Cordless Hammer Drill | Milwaukee | 2904-20 | M64AF231807534 | 10/27/2023 |
| Cordless Hammer Drill | Milwaukee | 2904-20 | M64AF231807533 | 10/27/2023 |
| Cordless Impact Drill | Milwaukee | 2953-20 | M67AF231805534 | 10/27/2023 |
| Cordless Impact Drill | Milwaukee | 2953-20 | M67AF231805533 | 10/27/2023 |
| Drill | Dewalt | DCD996 | DH68NOM | 8/11/2023 |
| Drill | Dewalt | DCD996 | DH67TNC | 8/11/2023 |
| Generator | Honda | EB3000C | ABCDEFGHIJKLM | 07/15/20 |
| Generator | Honda | 1000 | AKN608 | 07/15/20 |
| Generator | Honda | EU3000is | 8610200317 | 07/15/20 |
| Generator | Honda | 2000I | EAAJ-2176424 | 07/15/20 |
| Hedge Trimmer | Stihl | KM130R | 503149726 | 07/15/20 |
| Hedge Trimmer | Stihl | HSB1R | 4737100 | 07/15/20 |
| Impact | Dewalt | DCF887 | DH62J30 | 8/11/2023 |
| Impact | Dewalt | DCF887 | DH6162M | 8/11/2023 |
| Impact | Milwaukee | 2767-20 | H96AM2211 06799 | 8/11/2023 |
| Impact | Milwaukee | 2767-20 | H96AM2216 06186 | 8/11/2023 |
| Leaf Blower | Stihl | BG65C | 263572386 | 07/15/20 |
| Leaf Blower (backpack) | Stihl | BR600 | 297589059 | 07/15/20 |
| Leaf Blower (backpack) | Stihl | BR600 | 297076714 | 07/15/20 |
| LED Light | Dewalt | DW919 | 374698201415-49 | 07/15/20 |
| LED Light | Dewalt | DW919 | 374742201415-49 | 07/15/20 |

**Affidavit of Sean McCaffrey**                                    **Page 5**

| LED Light | Dewalt | DW919 | 354453201447-49 | 07/15/20 |
|---|---|---|---|---|
| LED Light | Dewalt | DW919 | 374721201415-49 | 07/15/20 |
| Pole Saw | Stihl | HT131 | 299207147 | 07/15/20 |
| Sawzall Reciprocating Saw | Dewalt | DC385 | 517970 | 07/15/20 |
| Sawzall Reciprocating Saw | Dewalt | DC385 | 650435 | 07/15/20 |
| Sawzall Reciprocating Saw | Milwaukee | 6524-21 | A44A607060568 | 08/11/23 |
| Sawzall Reciprocating Saw | Milwaukee | 6524-21 | A44A606410085 | 08/11/23 |
| Sawzall Reciprocating Saw | Milwaukee | 6527 | 774A39472858 | 08/11/23 |
| Sawzall Reciprocating Saw | Milwaukee | 6509 | 808B395051531 | 08/11/23 |
| Sawzall Reciprocating Saw | Dewalt | DC385 | 556428 | 07/15/20 |
| Sawzall Reciprocating Saw | Milwaukee | 6527 | 774A392472858 | 07/15/20 |
| Sawzall Reciprocating Saw | Milwaukee | 6524-21 | A44A607160508 | 07/15/20 |
| Sawzall Reciprocating Saw | Milwaukee | 2821-20 | L37AD231105546 | 10/27/2023 |
| Sawzall Reciprocating Saw | Milwaukee | 2821-20 | L37AD222401075 | 10/27/2023 |
| Skill Saw | Dewalt | DCS570 | | 8/11/2023 |
| Skill Saw | Dewalt | DCS570 | DH3KTJB | 8/11/2023 |
| String Timmer | Stihl | | 265426967 | 8/11/2023 |
| String Timmer | Stihl | | 187587277 | 8/11/2023 |
| Weedeater | Stihl | FS240 | 187587277 | 07/15/20 |
| Weedeater | Stihl | FS110 | 28546967 | 07/15/20 |

A large dual axle, black PJ (brand/manufacturer) D7 (model) 10K (payload rating) trailer (VIN# 4P5D71221F1220676), with the added configuration and accessories of a split/spread gate,

**Affidavit of Sean McCaffrey**                                                **Page 6**

mounted spare tire, and retractable tarp kit were added (pictures taken by ORCA NPS staff of the missing trailer are shown below):





7.    The missing dual axle black dump trailer was purchased from Diamond K Trailers out of Medford, Oregon, and is a PJ Trailers (manufacturer) D7 (model) dump trailer with white

**Affidavit of Sean McCaffrey**                                                                                    **Page 7**

wheels with 8 triangular cutouts and 6 lugs.  There is a spare tire affixed to the right side of the trailer on the front-most side panel which has the same wheel color, cutout, and lug pattern.

8.      There is reflective safety striping down the sides of the trailer, alternating between white and red.  The stripes on the two rear door panels and the two visible side panels of the trailer each have six different alternating reflective white and red segments.  The trailer has a retractable tarp cover at top of the front of the trailer with tarp securing hooks at rear of the trailer.



9.      The left-rear of the trailer has a "PJ Trailers" red triangular logo, and the side of the trailer has the same logo near the top and front.  Also affixed to the trailer were several "Diamond K Trailer Sales" (the original trailer vendor) white stickers, at the top-right rear of the trailer and along right side of the frame near the front of the trailer side panel.

/ / /

/ / /

/ / /

**Affidavit of Sean McCaffrey**                                                          **Page 8**



10.     The trailer has two rear-facing brake lights at the right and left edges of the trailer near the trailer frame, below the dump-trailer doors, and has three circular red reflectors in the center of the trailer.  Along the sides of the trailer, there are several circular red reflectors along the bottom and sides of the trailer near the dump-trailer doors and the rear section of the trailer fenders.  NPS ORCA Facility Manager Joshua Haggett also stated that the trailer's brake cable had been cut, and that there was a broken and missing rear pin at the top right-side rear of the trailer.

11.     The total estimated value of all the missing government property taken from the ORCA maintenance area was approximately $100,000.

12.     **The Investigation** - ORCA employees discovered vehicle tracks in the morning snow/frost that appeared fresh.  The tracks could have only been made by those with vehicle access to the administrative and maintenance areas of ORCA behind the felled trees across the Oregon Caves Highway.  The vehicle tracks appeared to be leading out of the ORCA property

**Affidavit of Sean McCaffrey**                                                          **Page 9**

along the designated and well-known and signed wildland fire "escape route", locally known as the 960 Road.

13.    USPR Chief Troy requested assistance from law enforcement agencies local to ORCA, which is a federal proprietary property with state and local authority and jurisdiction. Later in the afternoon, JCSO Detective Petetit called and informed USPR Chief Troy and JCSO Deputy Wolfe and U.S. Forest Service (USFS) Special Agent (SA) Norris located the missing BobCat ToolCat parked on National Forest Road 059 (NF-059) near its intersection with NF-4611.  JCSO Deputy Wolfe and USFS SA Norris secured the BobCat ToolCat, towed it to the JCSO impound facility, where it was processed for physical evidence.

14.    On November 29, 2023, a partial fingerprint from the BobCat ToolCat was recovered by JCSO Deputy Petetit and JCSO Deputy Wolfe, who transferred the evidence to USPR Chief Troy on November 30, 2023.  The results of that print are still pending.

15.    While recovering and processing the BobCat ToolCat, USFS SA Norris informed USPR Chief Troy that Keegan COOPER (hereinafter "COOPER") may be a person of interest in the investigation and had property near the route the BobCat ToolCat had appeared to have been driven from ORCA.

16.    On December 11, 2023, I interviewed a BLM employee whose identity is known to me and available to the Court upon request.  I will reference this induvial as Adult Witness 1 (AW1).  AW1 heard other BLM staff discussing the theft from ORCA and stated that AW1 knew who had committed the theft.  I talked with those involved in the discussion, including AW1's supervisor.  AW1 appeared to AW1's supervisor and other work associates to be trustworthy and credible.  During the interview, AW1 stated that AW1 knew COOPER

**Affidavit of Sean McCaffrey**                                                                            **Page 10**

possessed property immediately adjacent to ORCA.  AW1 previously worked for COOPER

while employed by "KB Cooper Trucking" as a truck driver.  AW1 knew that COOPER fell

trees across roads in the past to keep BLM officers and agents from accessing forested areas that

COOPER was working in.  AW1 later quit working for COOPER, and in that process, received

threats from COOPER if AW1 ever told anyone about COOPER's dealings.  AW1 was later

hired to repossess a tractor owned by another of AW1's employers, and COOPER had used trees

to keep AW1 and his employer from repossessing the tractor.  I asked AW1 to identify

COOPER's property on a map, and AW1 identified COOPER's property outside of the small

community of Williams, near the boundary with ORCA, and immediately accessible to ORCA

via USFS and BLM roads.

17.     From February 11, 2024, to February 14, 2024, I went to Grants Pass to meet with

JCSO Deputy Chris Watson and BLM Law Enforcement Ranger (LER) David Grissom.  Both

JCSO Deputy Watson and BLM LER Grissom have a history with COOPER, and BLM LER

Grissom was actively investigating COOPER for another incident that occurred near where the

BobCat ToolCat was recovered.

18.     At approximately 6:00 p.m. on November 27, 2023, the date of the suspected

ORCA theft, BLM LER Grissom was called for a possible significant fire on BLM property near

COOPER's property, which is located approximately 7.1 miles from the boundary of ORCA, and

ORCA can be accessed by the "escape route" 960 Road.  BLM LER Grissom arrived at the scene

of the fire and identified a large piece of industrial machinery, a log loader, that had been on fire.

BLM LER Grissom identified COOPER at the scene.  COOPER stated that he was in possession

of the log loader and had been operating the log loader before it caught fire.  BLM LER Grissom

continued learned that the log loader was reported stolen. The log loader was last seen by its legal owners on the NF-059 Road, immediately adjacent to the intersection of BLM Road 39-5-31 (BLM Rd 39-5-31) and BLM Road 39-6-36 (BLM Rd 39-6-36). The location the log loader was last parked by its legal owner was approximately 1 mile from where the ORCA BobCat ToolCat was recovered on the NF-059 Road. From the location that the log loader was stolen, the west side of COOPER's property could be accessed within two miles by traveling on the well-maintained BLM 39-6-36 Road. The BobCat ToolCat was recovered approximately 2.7 miles from the west side of COOPER's property as accessed by the BLM 39-6-36 Road. At 6:30 p.m. on November 27, 2023, the date of the suspected ORCA theft, BLM LER Grissom observed COOPER leaving COOPER's property in the direction that could easily access ORCA property.

19.    JCSO Deputy Watson relayed to me that Tyler GREER (hereinafter "GREER") had been picked up walking around the area on a previous incident. GREER stated to Deputy Watson that GREER was COOPER's "right hand man" and that they were always together, stayed together, and worked together on COOPER's property near ORCA. GREER had been looking for an associate while walking around the area on foot, and GREER stated that he had walked through the ORCA administrative area, including the ORCA maintenance shop where the theft on November 27, 2023, had occurred.

20.    JCSO Deputy Watson showed me several trees that he stated that COOPER had cut on BLM property immediately adjacent to COOPER's property, and they showed a cut pattern similar to those cut at the Oregon Caves Highway.

21.    JCSO Deputy Watson also relayed to me several incidents from COOPER's history in the area. In one particular incident, JCSO Deputy Watson was called to assist the

**Affidavit of Sean McCaffrey**                                                    **Page 12**

retrieval of several pieces of heavy equipment by their owner who had loaned the heavy

equipment to COOPER.  When the owner arrived, COOPER brandished a firearm on his

property and did not relinquish control of the heavy equipment per the conditions of his

agreement with the owner.  JCSO Deputy Watson relayed to me information that COOPER had

extensive knowledge of the area and had driven all of the USFS and BLM roads in the area many

times on his UTV that he had recently broken.

      22.    Considering the BobCat ToolCat appeared to have been driven from ORCA, and

that a large dump trailer was towed from ORCA, it was likely that two separate vehicle operators

were needed to remove both the large dump trailer and the BobCat ToolCat from the ORCA

property in the same incident, JCSO Deputy Watson relayed to me that if COOPER was

involved, that it would be highly likely that GREER had participated in some way.  Considering

both COOPER and GREER have experience operating heavy machinery in logging, trucking,

and towing operations (COOPER had "KB Cooper Trucking Logging" licensed as a business in

Oregon, and has an extensive logging and heavy machinery operating history), all of which

would be needed to drive a BobCat ToolCat and tow a large dump trailer filled with the missing

UTV and the rest of the missing power tools and generators from the ORCA maintenance shop.

      23.    **Locating The Trailer** - On February 27, 2024, I requested assistance from BLM

SA Justin Castro.  I asked if SA Castro could drive by known locations that COOPER had

associated with and attempt to locate the missing large dump trailer or UTV.  SA Castro sent me

a picture message that clearly showed a large black dump trailer, identified by brand "PJ"

markings and appearance, as the same make and model of the trailer that was missing from

**Affidavit of Sean McCaffrey**        **Page 13**

ORCA.  Attached to the trailer was a large black Dodge pickup with a "KB Cooper Trucking Logging" logo affixed to the side.



COOPER had several vehicles registered to him through Oregon DMV records, and one was a Dodge Ram pickup (ORLP 840HER).  SA Castro called and informed me the trailer and truck were parked at 4071 Hooker Road, Roseburg, Oregon 97470 (hereinafter "Premises").

**Affidavit of Sean McCaffrey**                                                                     **Page 14**

24.     The trailer observed by CASTRO was a double axle black trailer, with white wheels with 8 triangular cutouts and 6 lugs on each wheel, with a spare tire with the same wheel, cutouts, and lugs on the right side of the trailer near the top and front of the trailer.  The trailer had a red triangular logo similar to the "PJ Trailers" logo just above and to the front of the spare tire, and a white "PJ" trailer logo on the ride side of the trailer tongue.  There is a small unique white sticker "Diamond K Trailer Sales" rectangular sticker on the right side of the trailer frame, near the front of the trailer cargo area, beneath the spare tire.  The trailer also has a retractable tarp cover attached to the top of the front of the dump trailer and has tarp securing hooks at the rear of the dump trailer.  The trailer also has two reflective safety striping down the right side of the dump trailer's visible side panels, with each striping having six alternating segments of red and white.  The trailer appears to have a missing rear pin at the top right-side rear of the trailer where it would normally be located.



**Affidavit of Sean McCaffrey**                                                    **Page 15**

25.     I contacted ORCA Facility Manager Joshua Haggett and forwarded Haggett the pictures taken by SA Castro.  I asked Haggett if he or any of the ORCA NPS staff could definitively identify if the trailer was the one missing from ORCA.  Haggett said that he and his staff could not definitively identify the trailer based upon the available photos, but that it looked "close to the same" trailer.

26.     On the morning of March 4, 2024, I returned to Grants Pass to meet with JCSO Deputy Watson and BLM LER Peter Sawtell.  JCSO Deputy Watson informed me that during his routine patrols to the area, starting in the fall of 2021, around and adjacent to COOPER's property near Williams, Deputy Watson had never seen COOPER with a PJ trailer, and an Oregon DMV records check does not show a PJ trailer registered to COOPER.

27.     Additionally, on the morning of March 4, 2024, SA Castro returned to perform a plain view observation of the Premises from the co-located Roseburg Marine Services business. SA Castro stated that he saw COOPER (SA Castro is familiar with COOPER from several prior BLM investigations) exit a building on the west side of the 4071 Hooker Road property.

28.     **Search Target Location** - Based upon COOPER's history of towing trailers (COOPER's business is "KB Cooper Trucking and Towing, as per business license records out of Oregon), his possession of multiple vehicles capable of towing trailers, his familiarity with the roads and ability to navigate to and from ORCA and his property near ORCA, a reported similar ability to fall trees and obstruct roadways to prevent access, an accomplice (GREER) that stated he (GREER) was familiar with the ORCA area and stated he had been to the ORCA maintenance shop, and that an accomplice was also very likely necessary in the facilitation of the ORCA theft, I believe that the dual axle black dump trailer observed at the Premises attached to the black

**Affidavit of Sean McCaffrey**                                    **Page 16**

Dodge pickup with the affixed "KB Cooper Trucking Logging" logo, is the stolen PJ D7 trailer

from ORCA, and that additional evidence of the ORCA theft is present at the Premises.  I also

believe the building, additional vehicles, containers, and machines on the west side of the

Premises (outside of the co-located and fenced off marine supply business) will contain the other

tools and/or equipment stolen from ORCA.

    29.    **Search Warrant Execution and Arrest** – On March 5, 2024, at approximately

11:00 a.m., I received a signed search warrant for the premises of 4071 Hooker Road, Roseburg,

Oregon.  At approximately 2:00 p.m., I led the interagency team to serve the search warrant.

During the serving of the search warrant, the interagency team discovered numerous stolen items

from ORCA.

| Item # | Quantity | Recovered Item | Serial Number |
|--------|----------|----------------|---------------|
| 1 | 1 | Dewalt Drill | DCD996 |
| 2 | 1 | Honda Generator | EB3000C |
| 3 | 1 | Dewalt Skillsaw | DCS57 |
| 4 | 1 | Stihl Chainsaw | 084AV |
| 5 | 2 | Dewalt Heater | |
| 6 | 1 | Traffic Tally | 1216CC32933 |
| 7 | 2 | Rigging Supply Nylon Strap | |
| 8 | 1 | Cotton Bag "Dirt Bag" | |
| 9 | 1 | Lifting Cable Wire Rope 50' | |
| 10 | 1 | Lift All 5/8 diameter 3' | |
| 11 | 1 | Dewalt Equipment Bag | |
| 12 | 1 | Preco 4241 Light | |
| 13 | 5 | Torch Heads Bernzomatic | |
| 14 | 1 | Handsaw Crosscut | |
| 15 | 1 | Radio | BKKNG1505490061 |
| 16 | 1 | Rugged Geek Intelliboost | RGXX1048490 |
| 17 | 1 | Bag with two wedges " | |
| 18 | 1 | Stihl Axe | |
| 19 | 1 | US DOI Boundary Sign | |
| 20 | 1 | Stihl Leaf Blower | 297589059 |
| 21 | 1 | Bag with four wedges | |

**Affidavit of Sean McCaffrey**                                         **Page 17**

| 22 | 1 | Fall Protection Anchor | |
| 23 | 1 | Grubbing Tool - Fiskar | |
| 24 | 1 | White Roop Fall Protection Lanyard | |
| 25 | 1 | Fall Protection Harness 3M Protera | |
| 26 | 1 | Fall Indicator Strap Werner | |
| 27 | 1 | Valve | MV220CF |
| 28 | 1 | Dump Trailer | |
| 29 | 1 | Can-Am UTV | |

30.    **Questioning Brooke Cooper about COOPER's Phone** – While serving the search warrant at the Premises, I called Brooke Cooper, COOPER's wife, and asked her to meet me at the Hooker Road Property to answer questions about any knowledge of COOPER's involvement with stolen ORCA property.  Brooke Cooper stated that she was the wife of COOPER and that they share a child.  Approximately two weeks ago, Brooke Cooper had confronted COOPER about the stolen PJ D7 trailer and the stolen Can-Am UTV.  Brooke Cooper had previously seen the press-release from ORCA where the stolen PJ D7 trailer and the Can-Am UTV were described as missing.  Brooke Cooper suspected the PJ D7 trailer COOPER had been using, and a Can-Am UTV that she had observed at a cabin at Diamond Lakes Resort, were stolen from ORCA.  Brooke Cooper stated that COOPER told her that he had acquired the PJ D7 trailer from GREER and had acquired the Can-Am UTV from an auction in Washington state.  Because Brooke Cooper did not want to be associated with COOPER's suspected theft and possession of stolen government property, Brooke Cooper moved out of the Hooker Road Property after living there with COOPER from February 8, 2024, to February 23, 2024, and is currently living with her grandfather and grandmother.

**Affidavit of Sean McCaffrey**                                                    **Page 18**

31.    I asked Brooke Cooper if COOPER often used his phone to communicate with GREER (an associate identified by BLM LER Grissom and JCSO Deputy Watson as COOPER's "right hand man" at COOPER's Williams Property, just outside ORCA).  Brooke Cooper stated COOPER used his phone to talk and exchange text messages with GREER, and stated she had text messages from the time period of when COOPER said he was leaving the Williams Property.  Brooke Cooper showed me text messages on her phone from COOPER.  On November 28, 2023 (the day the ORCA theft was discovered) at 8:43 a.m., COOPER sent Brooke Cooper a text stating "Williams is done even the cam trailers are out. It is finished completely no more williams ever again!!!!!!!!!!!...."



32.    Brooke Cooper has stated she intends to seek a state restraining or protection order from COOPER but has not completed the process and is currently seeking counseling. Brooke Cooper stated she is locked out from her bank and financial institutions because of the civil financial judgements against COOPER and the debts he's incurred.  Brooke Cooper stated that she had helped sell things for COOPER on Facebook Marketplace via her Facebook account, but stated she did not know if anything from ORCA was sold, or if anything that had previously been stolen was sold.

33.    I asked Brooke Cooper if COOPER had any close associates, and she stated Cody Ramsey and GREER both frequently associated with COOPER.  Brooke Cooper stated that GREER and COOPER had known each other for about 15 years, and while they worked together down at the Williams Property, they were together every day.

34.    A computer records check shows Brooke Cooper does not have a criminal history.

35.    **The Arrest of COOPER** – Also during the serving of the search warrant, COOPER was observed in possession of what appeared to by the stolen Can-Am UTV while it was being towed on a flatbed tow truck by DCSO Deputy Bird near Dry Creek Store, Milepost 45, on Oregon Highway 138.  Deputy Bird had been sent a photo of the stolen ORCA Can-Am UTV by DCSO Detective Nick Hansen.  Deputy Bird initiated a probable cause traffic stop for suspicion of Oregon state law prohibiting the unauthorized use of motor vehicles (ORS § 164.135(2)).  While investigating, Deputy Bird observed that the VIN on the UTV had been removed or altered in two locations.  Deputy Bird placed Cooper under arrest on suspicion of Oregon state law prohibiting the unauthorized use of motor vehicles (ORS § 164.135(2)).

36.     **COOPER's Cell Phone –** Detective Hansen traveled to assist DCSO Deputy Bird and at the traffic stop and arrest location, identified COOPER's cell phone (furthermore referred to as "Device") in the cab of the tow truck COOPER had been driving, and seized the Device as evidence.  COOPER's Device appeared as an iPhone (of an unknown model or serial number as that information is commonly stored within the data of the device and not printed or inscribed on the exterior of the device), with a gray plastic case and a picture of a small child on the lock screen.  DCSO Detective Hansen secured the Device in DCSO facilities, and on March 6, 2024, transferred the Device to USPR Tim Groff.  USPR Groff took a photo of COOPER's Device's lock screen and shared that with me.  I sent the picture of COOPER's Device's lock screen to Brooke Cooper, who confirmed it was COOPER's Device.  USPR Groff transported the Device and secured it into evidence storage at the NPS South Operations Center at 121200 Highway 101 Orick, California 95555.

37.     **GREER's Statements Regarding Relationship with COOPER** – On March 12, 2024, GREER was arrested by DCSO detectives for state theft charges after finding suspected stolen ORCA property at GREER's residence during the service of a state-issued search warrant. BLM SA Castro, assisting DCSO detectives, recovered the following:

| Item # | Quantity | Recovered Item | Serial Number |
|---|---|---|---|
| 30 | 1 | Husqvarna Chainsaw | |
| 31 | 1 | Stihl Polesaw | |
| 32 | 1 | Toolbox with "ORCA" labeled kit | |
| 33 | 1 | Set UTV Tracks | |

(see photos below)

/ / /

/ / /

**Affidavit of Sean McCaffrey**                                                                    **Page 21**

 

  



38.     Pictures of the recovered property were sent to ORCA NPS employee Joshua

Haggett, who confirmed the items were missing from ORCA.

**Affidavit of Sean McCaffrey**                                                                          **Page 22**

39.     Immediately following the arrest of GREER, GREER is Mirandized and consents to talk with DCSO Detective Nick Hansen and BLM SA Castro who assisted the DCSO Detectives.

40.     GREER stated that his relationship with COOPER had lasted approximately 3 years, and that GREER had worked with COOPER intermittently during their relationship. GREER stated that he believed that COOPER owed him approximately $60,000 to $70,000 in unpaid wages. On the evening of November 27, 2023, GREER explained the reasons for an equipment fire that took place on the William's Property, for which BLM LER Grissom took a report, and detailed that he (GREER) was at the William's Property on the evening of November 27, 2023 (the date of the ORCA theft). GREER stated he had the UTV tracks at his house and said, "I had a feeling you guys (law enforcement/police) were gonna be coming and looking for 'em, and I didn't know what else to do with them." GREER stated that he doesn't want to talk about his involvement with the theft at ORCA because it may incriminate him. GREER stated that he's familiar with ORCA and has been there

## Technical Terms

41.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     *Wireless telephone:* A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the

**Affidavit of Sean McCaffrey**                                                    **Page 23**

telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    *Digital camera:*  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    *Portable media player:*  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This

removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    *GPS:*  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.    *PDA:*  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any

**Affidavit of Sean McCaffrey**                                                    **Page 25**

digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.     *IP Address:* An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

      g.     *Internet:* The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

42.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as wireless telephone, digital camera, portable media player, GPS navigation device, and PDF.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**Affidavit of Sean McCaffrey**                    **Page 26**

**Electronic Storage and Forensic Analysis**

43.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

44.    Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

**Affidavit of Sean McCaffrey**                                                                    **Page 27**

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f.       I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

45.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

46.    Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Conclusion**

47.    Based on the foregoing, that Brooke Cooper stated that GREER and COOPER communicated by cell phone, that COOPER and GREER were identified in the vicinity of ORCA or within the ORCA boundaries themselves (GREER stated to JCSO Deputy Watson that he had walked through the ORCA maintenance area where the theft occurred, and that BLM LER Grissom saw COOPER leaving the Williams Property in a direction that could have accessed the ORCA maintenance area where the theft occurred, on the evening that the theft occurred), that COOPER's and GREER's properties were both searched and stolen ORCA property was found, and based upon my training and experience regularly using cellular phones and mobile devices, I have probable cause to believe, and I do believe, that evidence of the Target Offense 18 U.S.C. § 641 (Theft of Government Property), in the following listed ways as described below and Attachment B, are presently located in GREER's Device which is described above and in Attachment A.  I therefore request that the Court issue a warrant authorizing a search of the Device described in Attachment A for the items listed in Attachment B, and below, and the seizure and examination of any such items found.

48.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) John C. Brassell.  I was informed that it is AUSA Brassell's opinion that the

**Affidavit of Sean McCaffrey**                                                    **Page 29**

affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

### Request for Sealing

49.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause destruction of or tampering with evidence, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

S/Sean McCaffrey
_____
SEAN McCAFFREY
U.S. Park Ranger, National Park Service

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ____8:15____
a.m./p.m. on ____4/1/24_____.

_____
HONORABLE MARK D. CLARKE
United States Magistrate Judge

**Affidavit of Sean McCaffrey**                                                    **Page 30**

**ATTACHMENT A**

**Device to Be Searched**

The property to be searched appears to be a red Apple iPhone with a cracked screen protector over the front screen, hereinafter the "Device."  The Device is currently secured in evidence at 443 Rifle Range Street, Roseburg, Oregon.  The phone was seized from suspect, Tyler GREER, during an arrest.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Items to Be Seized**

1.     All records on the Device described in Attachment A that relate to violation of 18 U.S.C. § 641 (Theft of Government Property), involving Tyler GREER, since November 27, 2023, including:

    a.     Communications about Oregon Caves National Monument and Preserve (ORCA) or its staff and employees.

    b.     Communications or evidence about the identity of any associate or associates that communicated about ORCA, its staff and employees, or the commission of theft from ORCA.

    c.     Communications and images of or about property that was initially reported stolen, or later identified as stolen, from ORCA.

    d.     Information regarding or recording Tyler Greer's schedule and/or travel from November 27, 2023, to March 5, 2024.

    e.     Communications of pictures or images, or stored pictures or images, of property taken from ORCA.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.     Records evidencing the use of the Internet, including:

    a.     Records of Internet Protocol addresses used.

    b.     Records of Internet activity, including firewall logs, caches, browser

history and cookies, "bookmarked" or "favorite" web pages, search terms that the user

entered into any Internet search engine, and records of user-typed web addresses.

       c.     Records of data storage accounts and use of data storage accounts.

4.     As used above, the terms "records" and "information" include all of the foregoing

items of evidence in whatever form and by whatever means they may have been created or

stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data) and any photographic form.

**Search Procedure**

5.     The examination of the Device may require authorities to employ techniques,

including imaging the Device and computer-assisted scans and searches of the entire Device that

might expose many parts of the Device to human inspection in order to determine whether it

constitutes evidence as described by the warrant.

6.     The initial examination of the Device will be performed within a reasonable

amount of time not to exceed 120 days from the date of execution of the warrant.  If the

government needs additional time to conduct this review, it may seek an extension of the time

period from the Court within the original 120-day period from the date of execution of the

warrant.  The government shall complete this review within 180 days of the date of execution of

the warrant.  If the government needs additional time to complete this review, it may seek an

extension of the time period from the Court.

7.     If, at the conclusion of the examination, law enforcement personnel determine

that particular files or file folders on the Device or image do not contain any data falling within

the scope of the warrant, they will not search or examine those files or folders further without

authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Device does not contain any data falling within the ambit of the warrant, the government will return the Device to its owner within a reasonable period of time following the search and will seal any image of the Device, absent further authorization from the Court.

9.      If the Device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Device and/or the data contained therein.

10.      The government will retain a forensic image of the Device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Attachment B**                                                                                      **Page 3**